UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| STEVEN VICTOR PINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 7:17-cv-00165-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner Of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Steven Victor Pinson seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Pinson brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Pinson's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Steven Victor Pinson initially filed an application for Title II disability insurance benefits on April 16, 2014, alleging disability beginning on February 20, 2010. [Transcript (hereinafter, "Tr.") 20.] Administrative Law Judge Benton denied this request on June 27, 2014, and again denied it upon reconsideration on September 10, 2014. *Id.* Mr. Pinson filed a request for a hearing on September 12, 2014, which was held on May 10, 2016. *Id.* On September 1, 2016, ALJ Benton again denied Mr. Pinson's application. *Id*. at 17. The Appeals Council

denied Mr. Pinson's request for review on August 22, 2017. *Id.* at 1.

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through Step Four of the analysis, "the claimant bears the burden of proving the

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

2

existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Pinson met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 22; *see also* 20 C.F.R. § 404.131. Then at Step One, the ALJ found Mr. Pinson had not engaged in substantial gainful activity since the alleged disability onset date, February 20, 2010, through his date last insured. Tr. 22. At Step Two, the ALJ found Mr. Pinson to suffer from the following severe impairments: cervicalgia, lumbago, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disorder (COPD), and depression. *Id*. At Step Three, the ALJ determined his combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 22–23. Before moving on to Step Four, the ALJ considered the record and determined that Mr. Pinson possessed the following residual functioning capacity:

> [Mr. Pinson] had the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) except the claimant (1) could occasionally climb stairs and ramps; (2) could never climb ladders or scaffolds; (3) could frequently balance; (4) could occasionally stoop, kneel, crouch, and crawl; (5) must have avoided concentrated exposure to dust, odors, fumes and other pulmonary irritants; (6) must have avoided concentrated exposure to hazards such as moving mechanical parts and unprotected heights; and (7) would need the opportunity to very briefly change position, while remaining on task, after sitting or standing for approximately 30 minutes. Further, the claimant could (1) understand, remember and carry out simple instructions; (2) have occasional interaction with supervisors, coworkers, and the public; (3) only make simple, work-related decisions; and (4) only tolerate occasional change in work location.

*Id.* at 25. After explaining the RFC, the ALJ found at Step Four that, based on his RFC, age, education, and work experience, Mr. Pinson was not capable of performing past relevant work as a miner, but was capable of performing other jobs existing in the national economy. *Id.* at 32–33. Accordingly, the ALJ found at Step Five that Mr. Pinson was not disabled from February 20, 2010, through the date last insured, pursuant to 20 C.F.R. §§ 404.1520(f). *Id.* at 34. Mr. Pinson filed this action for review on October 18, 2017. [R. 1.]

B

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's

decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**II**

Mr. Pinson presents only one argument to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues that the ALJ failed to properly evaluate Listing 1.04 (spinal disorder). [R. 9 at 8.] For the reasons set forth below, Mr. Pinson's argument does not warrant a reversal of the ALJ's determination.

Mr. Pinson argues he should have been found disabled at Step Three of the disability analysis because his condition qualifies as an impairment under Listing 1.04. [R. 9 at 8–14.] At Step Three the ALJ is tasked with determining whether a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If the impairments do "meet or equal" one of those listed impairments, the claimant is deemed "disabled." *Id*. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). For a claimant to demonstrate that his "impairment is the *medical equivalent* of a listing," he must demonstrate that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414–15 (6th Cir. 2011) (citing 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a)). As the Sixth Circuit has explained, "[a]n administrative law judge must compare the medical evidence

5

with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Id*. Mr. Pinson had the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Mr. Pinson] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*.

Mr. Pinson now takes issue with the ALJ's discussion of whether his impairment meets or equals Listing 1.04, which is reprinted below:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> >
> > OR
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> >
> > OR
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. In his written decision, the ALJ addressed listings under section 1.00 *et seq.*, section 3.00 *et seq.*, and section 12.00 *et seq.* As to listings under section 1.00 *et seq.* and section 3.00 *et seq.*, the ALJ simply concluded, "The current evidence,

however, fails to establish an impairment that is accompanied by signs that are reflective of listing-level severity. Further, the claimant's treating or examining physicians of record have not reported all the necessary clinical, laboratory, pathology, radiographic, or operative findings specified therein." Tr. 23. In his discussion of these listings at Step Three, the ALJ did not provide citation to any exhibits to support this conclusion, nor did he discuss any medical evidence. Rather, he simply provided his conclusion. Mr. Pinson suggests this is insufficient. [R. 9 at 9.]

The Sixth Circuit has been inconsistent in how much analysis they require at Step Three. In *Malone v. Comm'r of Soc. Sec.*, the ALJ failed to "make specific findings on the issue of whether [Malone's] impairments were equivalent" to a listed impairment. 507 F. App'x 470 (6th Cir. 2012). The Sixth Circuit noted that the burden at Step Three was on Malone, and that Malone had not argued that he had a listed impairment at the hearing. Seeing that the ALJ had "considered all of the symptoms that were consistent with the medical evidence in determining his [RFC]," the panel affirmed despite the summary analysis at Step Three. *Id*. Conversely, in *Burbridge v. Comm'r of Soc. Sec.*, the Court concluded that the ALJ erred at Step Three, finding that his summary explanation was inadequate.[2] 572 F. App'x 412, 414 (6th Cir. 2014). The ALJ had cited to exhibits upon which he depended, but the Court concluded there was room for interpretation about what was contained within those cited exhibits. *Id*. at 416. The Court explained:

> [T]he ALJ was obliged to do more than simply cite the exhibit. Under these circumstances, a statement of "the reasons or basis" for the material finding would include a statement of which portions of the exhibit the ALJ relied on and why they supported a finding that Burbridge did not manifest the required deficits.

---

[2] The ALJ's conclusion read, "In this case, the evidence fails to establish deficits in adaptive functioning prior to age 22 (see exhibits 14E and 17F)." *Burbridge*, 572 F. App'x at 414.

7

*Id*. (citing *Reynolds,* 424 F. App'x at 414). In dissent, Judge Moore agreed that the ALJ's analysis was "cursory" and not a "model to be followed," but concluded that the deferential standard of review made remand inappropriate. *Id*. at 417. In *Forrest v. Comm'r of Soc. Sec.*, the ALJ stated only that "[t]he record does not contain any clinical findings or diagnostic laboratory evidence of an impairment or combination of impairments that would meet the requirements for any listed physical impairment." 591 F. App'x 359, 364 (6th Cir. 2014). The Court found this sufficient, noting that Forrest had not argued at the hearing that he met a listing, and that the ALJ had made "sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id*. at 366 (additional citations omitted). The *Forrest* Court further found that even if the ALJ's justifications at Step Three were insufficient, the error would be harmless. *Id*. at 366. Of all the aforementioned cases, the ALJ's explanation in *Forrest* seems most similar to the one in this case. Like ALJ Benton, the ALJ in *Forrest* noted only that the record did not support the listing. As the Sixth Circuit did in that case, this Court will look to the rest of the ALJ's decision to determine if this conclusion is supported by substantial evidence. Here, ALJ Benton addressed Mr. Pinson's back pain when determining his RFC in Step Four. Tr. 25–31.

Mr. Pinson argues that the objective medical evidence demonstrates that he satisfied Listing 1.04 from February 20, 2010, through at least December 31, 2015. There are three subsections to Listing 1.04, and Mr. Pinson does not identify which part of that listing on which he relies on, but his motion clearly demonstrates his reliance on Listing 1.04(A).[3] To satisfy the listing, Mr. Pinson must provide medical evidence of objective observations during the

---

[3] Listing 1.04(B) requires a diagnosis of spinal arachnoiditis and Listing 1.04(C) requires a diagnosis of Lumbar spinal stenosis. 20 CFR pt. 404, subpt. P, app. 1, § 1.04. Mr. Pinson's Motion and Memorandum in Support do not mention a diagnosis of either condition, nor has Mr. Pinson pointed to evidence in the record of such a diagnosis. [R. 8; R. 9.] Without such evidence, neither Listing 1.04(B) nor 1.04(C) can be applicable here.

8

examination, not merely his own allegations. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00D, 1.04(A).

To meet all qualifications of Listing 1.04, Mr. Pinson must demonstrate a spinal disorder resulting in the compromise of a nerve root or the spinal cord, a neuro-anatomic distribution of pain, limitations in the motion of his spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, and evidence of a positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). At an appointment with at United Medical Group on March 17, 2014, Dr. Susan D. Ford, D.O., noted a positive straight-leg raising test on his left side, along with paraspinal muscle spasms, decreased strength in his left leg, and diminished deep tendon reflexes in his left leg. Tr. 330. Dr. Ford diagnosed him with an "other and unspecified disc disorder of unspecified region." *Id*. After an MRI on March 27, 2014, United Medical Group identified a central disc protrusion affecting his spinal cord and compressing his nerve roots. Tr. 328. At his examination for disability determination, Deidre Parsley, D.O., confirmed his central disc protrusion and decreased range of motion in his spine, but stated his straight-leg raise test was negative. Tr. 358. However, Mr. Pinson has not alleged or provided evidence to demonstrate atrophy with associated muscle weakness or muscle weakness. [*See* R. 9.] In fact, Dr. Gutti noted on February 16, 2016, that his muscle tone was normal and noted full strength in his arms and legs. *Id*. at 360–62.

ALJ Benton cited the listing at issue and stated his conclusion that the evidence did not satisfy the specific criteria laid out in the listing. [Tr. 15.] Mr. Pinson did not argue for the application of Listing 1.04 at the hearing at this matter. *See* Tr. 39–66. The ALJ did provide commentary in his RFC discussion that sheds light on his Step Three finding. *See Malone*, 507 F. App'x at 472–473 (responding to Step Three objection by referring to ALJ's medical

discussion in RFC analysis). The burden is on Mr. Pinson to demonstrate that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Mr. Pinson] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id.* Even if he can demonstrate the other criteria of Listing 1.04, Mr. Pinson never alleges motor loss (atrophy with associated muscle weakness or muscle weakness). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

While the ALJ's discussion at Step Three might leave something to be desired, the ALJ's conclusions, taken as a whole, allow for meaningful judicial review. Ultimately, when one incorporates the ALJ's discussion of Mr. Pinson's impairments in his RFC findings, it cannot be said that his conclusion that Listing 1.04 did not apply is unsupported by substantial evidence. Additionally, the Court finds that Mr. Pinson's failure to provide evidence of motor loss prohibits him from meeting the criteria established in Listing 1.04.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Steven Victor Pinson's Motion for Summary Judgment [R. 8] is **DENIED**, but the Commissioner's Motion for Summary Judgment [R. 11] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 28th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge